IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN E. LONEWOLF, | ) | Civil Action No. 7:13-cv-00519 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. STEVE GARRETT, <u>et al.</u>, | ) | By:   Hon. Robert S. Ballou |
|     Defendants. | ) |         United States Magistrate Judge |

John E. Lonewolf, a Virginia inmate proceeding <u>pro se</u>, filed a verified Complaint, pursuant to 42 U.S.C. § 1983. Plaintiff pursues claims of deliberate indifference of another inmate attacking Plaintiff at the Rockbridge Regional Jail ("Jail") against Jail Superintendent John Higgins and Jail Sergeant Steve Garrett.[1] The court previously denied defendants' motion for summary judgment without prejudice and referred the dispositive issue to me for a report and recommendation because additional factual development was necessary to ascertain whether Sgt. Garrett had a sufficiently culpable state of mind amount to deliberate indifference. I conducted an evidentiary hearing on the issue, and, thereafter, the district judge approved the parties' consent to me exercising the court's jurisdiction over this matter, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(a). Based on the evidence presented at the evidentiary hearing, the complaint, and the evidence filed in support of defendants' earlier motion for summary judgment, I conclude that a trial is necessary to resolve disputes of material fact about whether Sgt. Garrett exhibited deliberate indifference. However, Plaintiff fails to establish any claim against Superintendent Higgins.

**I.**

The record reveals the following facts. On October 30, 2012, Sgt. Garrett booked Lonewolf into the Jail at approximately 10:40 a.m. using Lonewolf's birth name, Earl Giger, and

---

[1] By an earlier memorandum opinion and order, the court dismissed claims against the Jail and inmate Joel Copper and terminated them as defendants.

noted in the booking computer that Lonewolf was a convicted sex offender.[2] Sgt. Garrett assigned Lonewolf to general population, where Lonewolf had been assigned without incident during a prior stay at the Jail. Sgt. Garrett testified that Lonewolf did not raise any concern about his safety in the Jail or being housed in general population, but Lonewolf testified that he asked to not be housed in general population because he feared for his life.

Lonewolf alleged in the Complaint that, while being booked into the Jail, Lonewolf told Sgt. Garrett that he changed his legal name from Earl Giger to John Lonewolf, and Sgt. Garrett became visibly angry when Lonewolf insisted that he be booked with his new legal name. Sgt. Garrett began calling Lonewolf all kinds of names, like "child molester," and, "rapist," while knowingly within sight and hearing of two other inmates. Sgt. Garrett began yelling that Lonewolf was a child molester, had raped a nine-year old girl and entered information into the Jail's computer system that Giger was a sex offender. The two other inmates both heard Sgt. Garrett's comments and watched Sgt. Garrett enter Lonewolf's information into the computer. Lonewolf also testified that Sgt. Garrett talked to these inmates about Plaintiff's prior name, Earl Giger. Due to these disclosures, Lonewolf told Sgt. Garrett how he now feared for his life, but Sgt. Garrett said he did not care and that nothing would happen to him in general population.

In contrast, Sgt. Garrett explained that, except for trusties, already-booked inmates neither have access to nor are permitted around the booking desk at any time. Sgt. Garrett explained that trusties may clean the bathroom in the booking area while an officer supervises them or may resupply sheets and uniforms stored in the area. Sgt. Garrett explained that no other inmate, including trusties, was around the booking area when he booked Lonewolf into the Jail. Sgt.

---

[2] A court in Illinois convicted Lonewolf of aggravated sexual battery in the early 1990s.

2

Garrett does not deny the allegation that he described Lonewolf's criminal history but denies that he got upset when Lonewolf insisted being booked under "Lonewolf." Sgt. Garrett also denied being aware that Lonewolf was at risk being housed in general population, as Lonewolf requested, or that inmate Copper posed a threat to Lonewolf.

Lonewolf entered general population, and Sgt. Garrett left the Jail when his shift ended at 2:00 p.m. At approximately 8:30 p.m., fellow inmate Joel Copper entered Lonewolf's cell and said he was sure he knew Lonewolf as "Hinger" or "Henger." Lonewolf said his name was Lonewolf, and Copper then brutally attacked Lonewolf for about ninety minutes. Copper repeatedly demanded to know Lonewolf's real name during the attack, and Lonewolf finally relented and admitted being Earl Giger. Lonewolf was subsequently hospitalized for more than three months due to multiple, significant facial fractures, broken ribs, and intestinal injuries.[3]

Although Copper had attacked at least one other inmate at the Jail previously, Sgt. Garrett denied knowing of the attack. Inmate Copper testified that Sgt. Garrett said while he booked Cooper into the Jail,

> "[D]on't give us no trouble unless we put you around a child molester. . . ." And he winked at me. I said, "Mr. Garret, please don't put me around nobody like that. When I was in the jail before in 2009, they put a guy in my cell, same situation. We didn't get into a fight to this extent, but he had to get out of the cell with me because of . . . stuff that happened to me when I was a child. I can't be housed around somebody like that."
>
> I made it very clear to Sgt. Steve Garrett why. He apologized to me, and he said he didn't know that about [me] and he said, "You don't have to worry about that happening." Well, they put a[n accused child molester] back there three days prior to putting Mr. Lonewolf back there that had some crazy charges, and I told Steve Garrett . . ., "[L]ook man, you got to get me out of here or get him out of here." He removed the guy. There was no physical altercation. I went to Sgt.

---

[3] Copper was subsequently convicted of aggravated malicious wounding, but no transcripts are in the record.

3

> Steve Garrett [and] said, "[P]lease man, don't house me around people like that. I don't care if you got to put me in seg[regation,] just don't house me around people like that."
>
> Well, three or four days later, they put Mr. Lonewolf in there. When Sgt. Garrett put him in there before he opened the gate and let him in, he said, "I got one for you-all," and was laughing and put him in there. That kind of raised our suspicions so, of course, phone calls were made to check his record and we found out . . . or things were found out . . . . I feel like he was put in there intentionally by Sgt. Steve Garrett so that something would happen.
>
> . . . I made it very clear, "Please don't house me around people like that . . . ." I think he did it on purpose knowing that something would erupt.
>
> * * *
>
> I got in a fight [in 2009] with [a child molester]. It wasn't to the extent of this [attack on Lonewolf], but I did get in a fight with him and when Sergeant Steve Garrett came back and got hi, they were laughing about it [and] asked why this happened. I said, "You know why it happened. Please don't house me around people like that," and his words were, "Don't worry about it. We will say that he fell down the steps," and I got in no trouble for it. So, they were kind of winking at or I guess saying that it's okay to do this or wanting it to happen.
>
> * * *
>
> When a guard puts somebody in a pod, and he says, "I got one for you," and winks at a few dudes, that either means he is a snitch or child molester, typically.

(Evidetiary Hr'g Tr. 49-52, 61.)

Liberally construing the pro se Complaint, Lonewolf argues that Sgt. Garrett and Superintendent Higgins were deliberately indifferent to a substantial risk that an inmate would harm Lonewolf because he is a sex offender. Superintendent Higgins is also allegedly liable for leaving Copper in general population and not ensuring Lonewolf's safety. Superintendent Higgins was allegedly quoted in a newspaper as acknowledging violence and overcrowding at the Jail and, thus, allegedly "had to be aware" of Copper's propensity for violence and prior assaults. However, Jail records revealed that the pod in which Lonewolf was attacked was not

4

overcrowded and, in fact, had empty beds, and Superintendent Higgins uncontroverted testimony was that he was not aware of any specific risk Copper or any other inmate posed toward Lonewolf or inmates like Lonewolf.

## II.
### A.

Superintendent Higgins and Sgt. Garrett argue that they are entitled to summary judgment and qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

### B.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn in a light most favorable to the non-moving party, a reasonable fact-finder could return a

verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. Notably, a court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

## C.

The United States Constitution imposes a duty on "prison officials . . . to protect prisoners from violence at the hands of other prisoners."[4] Farmer v. Brennan, 511 U.S. 825, 833 (1994). A prison official's failure to protect an inmate from another inmate's attack violates the Constitution only if: 1) the deprivation alleged is "objectively, sufficiently serious," and 2) the prison official had a "sufficiently culpable state of mind" by acting with deliberate indifference.[5] Id.

Deliberate indifference means the prison official was personally aware of facts indicating a substantial risk of serious harm and actually recognized the existence of such a risk. Id. at 838.

---

[4] Lonewolf does not state whether the alleged constitutional deprivation occurred while he was a pretrial detainee or a convict. Nonetheless, the court analyzes the claims under the Eighth Amendment standard because the contours of the Fourteenth Amendment standard for pretrial detainees is coextensive with the Eighth Amendment standard for convicts. See, e.g., Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

[5] The court assumes for purposes of this opinion that Lonewolf's injuries constitute a sufficiently serious, objective deprivation. See, e.g., Case v. Ahitow, 301 F.3d 605, 606 (7th Cir. 2002) (recognizing serious physical injuries received during a violent assault by a fellow inmate were sufficiently serious under Eighth Amendment).

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52. "[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). However, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995). For example, a substantial risk might have been "so obvious that [a] factfinder could conclude that the [official] did know of it because he could not have failed to know of it." Id. (original emphasis). Whether a prison official had the requisite knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842.

### III.

After viewing the evidence in a light most favorable to Lonewolf, the court finds that a dispute of material facts precludes awarding summary judgment and qualified immunity in favor of Sgt. Garrett. The parties' evidence as to whether Sgt. Garrett's deliberate indifference stand in stark contrast. Viewing the record and all reasonable inferences in a light most favorable to Lonewolf, it is clear that, as alleged, Sgt. Garrett notified trusties, who have access throughout the Jail, and other inmates in the pod that Lonewolf was a sex offender. A reasonable jury could conclude that Sgt. Garrett recklessly disregarded a substantial risk of danger by shouting in an open area where trusties were working that Lonewolf was a sex offender and that he had raped a

7

young girl. A jury could accept these allegations and find that Sgt. Garrett acted with deliberate indifference by recklessly disregarding a substantial risk of danger to Lonewolf. The jury could conclude that a reasonable officer booking a sex offender into a jail should know that that inmates would attack Lonewolf in general population after Sgt. Garrett announced to trusties that Lonewolf raped a nine-year old girl – as Cooper allegedly did in 2009.

It was clearly established under Fourth Circuit precedent before these events that an Eighth Amendment violation occurs when a correctional officer intentionally or recklessly creates a substantial risk of harm to an inmate and then fails to affirmatively protect that inmate from the risk of harm that develops from the officer's deliberate actions or omissions. See, e.g., Farmer, supra; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 771 (4th Cir. 2003); see also Leary v. Livingston Cnty., 528 F.3d 438, 442 (6th Cir. 2008). Accordingly, I find that Sgt. Garrett is not entitled to qualified immunity or summary judgment due to disputes of material facts. See Lowery v. Stovall, 92 F.3d 219, 222 (4th Cir. 1996) (stating summary judgment based upon qualified immunity is inappropriate when a trier of fact needs to decide what actually happened). Consequently, whether Sgt. Garrett had the requisite knowledge is a question of fact to be resolved by a jury.

In contrast, Lonewolf fails to establish any basis of liability against Superintendent Higgins. "In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). The record evidence lacks Superintendent Higgins' involvement with Lonewolf's booking into the Jail or Copper's attack. Lonewolf cites

8

Superintendent Higgins' quotes in a newspaper mentioning that fights happen in the Jail and that the Jail houses up to 120 inmates although it was designed to house 94 inmates, but nothing in the record supports the tenuous inference that housing extra inmates at the Jail had any relevance to Copper's attack or the alleged deliberate indifference of Superintendent Higgins and Sgt. Garrett. Cf. Brown v. Plata, __ U.S. __, 131 S. Ct. 1910 (2011) (discussing when overcrowded prisons create systemic violations of the Eighth Amendment). Lonewolf also does not present evidence that Superintendent Higgins knew a subordinate engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Jail inmates. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (describing a supervisor's liability for being deliberately indifferent to a subordinate's violations of others' federal rights). Accordingly, Superintendent Higgins is entitled to qualified immunity and summary judgment.

## IV.

For the foregoing reasons, Lonewolf's claims against Superintendent Higgins are dismissed, pursuant to 28 U.S.C. § 1997e, and Lonewolf's claims against Sgt. Garrett must be resolved by trial.

Enter: March 30, 2017

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge